**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHELSEA GCA, REALTY
PARTNERSHIP, L.P., et al.,

      Plaintiffs,

      vs.                                                                            No. CIV 95-0804 JC/JHG

BRADBURY & STAMM CONSTRUCTION
COMPANY, INC., et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER came on for consideration of the Motion for Summary Judgment Against Mammoth Roofing, Inc. ("Mammoth") filed by Third-Party Defendant GS Roofing Products Company, Inc. ("GS Roofing") (Docket No. 86). Although Magistrate Judge Galvan entered a stay of the proceedings on October 28, 1997, he has specifically referred the present motion to me for a determination. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion is well taken and will be granted.

      In 1993, construction of the Santa Fe Factory Stores Outlet Mall was completed. Less than two years later, the roof was replaced by the owner, Plaintiff Chelsea GCA Realty Partnership ("Chelsea") because of an alleged odor problem. Chelsea brought suit against the general contractor, Bradbury & Stamm, and the project architects for damages including the cost of replacing the roof based upon breach of contract, negligence, breach of warranty, and contractual and common law indemnity. The contractor filed a third-party claim against Mammoth, the roofing subcontractor, who

in turn filed a third-party complaint against GS Roofing, the manufacturer of the roofing products used on the job.

Mammoth accurately characterizes its third-party complaint as follows: if Mammoth is held responsible for damages as a result of Mammoth's compliance with the specifications and assembly methods mandated by GS Roofing, then GS Roofing is responsible to Mammoth for any such damages. Thus, a conventional "derivative" liability claim has been stated. At the present stage of litigation, however, mere allegations are insufficient for the claim to survive.

Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986). Upon such a showing,

> [the] adverse party may not rest upon the mere allegations or denials of the [movant's] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Id. (emphasis supplied). Further, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . ." Rule 56(e).

In February 1997, the Court denied a Motion for Summary Judgment filed by Mammoth on the basis that it was premature and instead ordered that limited discovery be undertaken. Twelve depositions have now been taken and these include at least one designated representative of each party to the lawsuit. Although the limited discovery order contemplated depositions of three experts, it appears that Mammoth chose not to depose them. Thus, I am unpersuaded that I should defer

ruling based upon Mammoth's argument that it has been "precluded" from obtaining expert testimony to support its allegations.

Moreover, I have considered the "expert" reports submitted by Mammoth although they do not necessarily conform to the dictates of Rule 54. Despite Mammoth's depiction, the reports and letters do not implicate defective materials or improper specifications by the manufacturer as a cause of the odor problem. Rather, the reports indicate that Mammoth failed to follow the manufacturer's specifications for installation and that such faulty installation may be responsible for the resulting problems. Mammoth has come forward with no evidence that GS Roofing should be held responsible for the failure to follow the manufacturer's instructions.

Mammoth argues that GS Roofing nonetheless owes it a duty of indemnification--either contractually-derived or under common law--even if the roofing problems resulted from improper installation. Under the manufacturer's warranty, however, GS Roofing's obligations relating to defective products or faulty workmanship by the installer are owed *to the owner*, not the subcontractor. In a written agreement between the roofing subcontractor and manufacturer, ***Mammoth agreed to indemnify GS Roofing*** for problems within the first two years resulting from faulty workmanship in the roof's installation. This agreement does not provide a corresponding obligation for GS Roofing to indemnify Mammoth for losses it incurred as a result of its own faulty workmanship.

GS Roofing's representative inspected the roofing installation and issued the "Ten Year Warranty" to the owner. Mammoth seems to argue that GS Roofing thereby determined that the roof installation complied with the manufacturer's standards and specifications, and that if this determination was in error, GS Roofing is responsible for Mammoth's improper installation under

-3-

negligence principles. Yet Mammoth does not identify the source of such a "duty to supervise." To the contrary, a document entitled "Roof Membrane Warranty Program" *(Exh. 14)* expressly provides as follows:

> *The GS Inspection Service is strictly for the purpose of providing information to GS itself to enable it to issue its Warranties. No third parties, including Owner, Architect or Applicator, may rely in any way upon instructions or suggestions rendered as a part of the Service.*

In light of this language, I find that no such "duty to supervise" arises from GS Roofing's inspections of the roof for purposes of issuing its warranty to the owner, Chelsea.

In summary, none of the evidence submitted supports Mammoth's allegations that GS Roofing supplied defective materials or that compliance with its specifications for installation resulted in a faulty roof. There being no material issues of fact in dispute, and because Mammoth has had sufficient opportunity to develop such evidence if it exists, GS Roofing is entitled to judgment as a matter of law on the third party complaint.

Wherefore,

IT IS HEREBY ORDERED that the Motion for Summary Judgment Against Mammoth Roofing, Inc. ("Mammoth") filed by Third-Party Defendant GS Roofing Products Co., Inc. ("GS Roofing") (Docket No. 86) be, and hereby is **granted**. Judgment will be entered for GS Roofing Products Co., Inc. and against Mammoth Roofing, Inc., on the third-party complaint.

DATED this 9th day of April, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Mammoth:        Benjamin Silva, Jr.
                                             Silva, Rieder & Maestas, P. C.
                                             Albuquerque, New Mexico

Counsel for GS Roofing:      David M. Kleiman
                                             Vial, Hamilton, Koch & Knox, L.L.P.
                                             Dallas, Texas

                                             John K. Silver
                                             Joe L. McClaugherty
                                             McClaugherty & Silver, P. C.
                                             Santa Fe, New Mexico